UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEROME SANDRIDGE, | ) | Case No. 1:16CV2299 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| TIM BUCHANAN, Warden, | ) | |
| NOBLE CORRECTIONAL | ) | **REPORT AND RECOMMENDATION** |
| INSTITUTION[1], | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Respondent. | ) | |
| | ) | |

Pro se Petitioner Jerome Sandridge ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred in conjunction with his Cuyahoga County, Ohio Court of Common Pleas convictions for rape, gross sexual imposition, and kidnapping with a sexual motivation specification. *Id.*; ECF Dkt. #11-1 at 65-66. On August 26, 2016, Petitioner executed his federal habeas corpus petition and on September 15, 2015, the petition was filed. ECF Dkt. #1. On December 2, 2016, Respondent Mary Potter, Warden of the Belmont Correctional Institution in St. Clairsville, Ohio (previously named Respondent), where Petitioner was housed, filed an answer/return of writ. ECF Dkt. #11. On December 27, 2016, Petitioner filed a traverse to the answer/return of writ. ECF Dkt. #13.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A. State Trial Court

The Cuyahoga County Grand Jury indicted Petitioner on: rape of a victim who was less than

---

[1] On March 3, 2017, Petitioner filed a notice informing the Court of his transfer from Belmont Correctional Institution to Noble Correctional Institution. ECF Dkt. #14. The docket reflects the change of address for Petitioner, but does not reflect the change in Wardens as Respondent. The Court orders that the docket reflect that Tim Buchanan be substituted as Respondent on the docket as Warden of Noble Correctional Institution, where Petitioner is custody housed.

ten years old in violation of Ohio Revised Code ("ORC") § 2907-.02(A)(1) (Count 1); attempted rape of a victim who was less than ten years old pursuant to ORC § 2923.03(A)(1) (Count 2); two counts of gross sexual imposition pursuant to ORC § 2907.05 (Counts 3 and 4); and two counts of kidnapping in violation of ORC § 2905.01 (Counts 5 and 6). Sexually motivated predator specifications, notice of prior conviction, and repeat violent offender specifications accompanied the charges. ECF Dkt. #11-1 at 7, 64; *see also State v. Sandridge*, No. 101653, 2015 WL 1851395, at *1, 2015-Ohio-1541 (Ohio App. 8th Dist. Apr. 23, 2015).

On May 5, 2014, Petitioner, with counsel, withdrew his not guilty plea and entered guilty pleas to one count of rape without specifications, one count of gross sexual imposition without the specification, and one count of kidnapping with the sexual motivation specification only. ECF Dkt. #11-1 at 65-66. The trial court thoroughly questioned Petitioner about pleading guilty to amended charges, informed him of the amended charges and maximum penalties, and explained Petitioner's constitutional rights and the waiver of those rights upon entering a guilty plea. ECF Dkt. #11-2 at 15-33. The trial court journalized the entry accepting the guilty plea on May 9, 2014. *Id.*

On June 5, 2014, Petitioner, with counsel, appeared for his sentencing hearing. ECF Dkt. #11-2 at 40. At the hearing, Petitioner, through counsel, orally motioned the court to withdraw his guilty plea. *Id.* at 46. Petitioner spoke at the hearing, indicating that he did not have oral or vaginal sex with the victim, and he could not imagine how his DNA was found on her underwear. *Id.* at 47. He stated that he had never seen the child victims before in his life. *Id.* He explained that the reason that he entered a guilty plea previously was because his former counsel told him that the child victims were coerced into saying that he committed the crimes. *Id.* He also indicated that he never received a bill of particulars or discovery. *Id.* at 48. His current counsel disputed that, explaining that most of the discovery was marked for counsel's eyes only, but he discussed the contents of everything with Petitioner. *Id.* Petitioner also questioned the State's DNA test result which indicated that he could not be excluded as a source of the saliva or touch DNA found on the victim. *Id.* at 56-57. He indicated that he thought that the State's DNA test result definitively showed him as the source, which was also why he pled guilty, but he interpreted the result now as meaning that he and everyone else in the courtroom could not be excluded as the source of the DNA. *Id.* at 57.

The trial court questioned Petitioner's current counsel, who indicated that he had been an attorney for 12-13 years and handled the types of cases like that of Petitioner many times as both a prosecutor and as a defense attorney. ECF Dkt. #11-2 at 48. Counsel indicated that he discussed all of the discovery with Petitioner, and the trial court questioned Petitioner about the voluntariness of his plea at the plea hearing, as well as the knowing and intelligent bases for the plea. *Id*. at 48-56. Petitioner discussed the independent DNA testing that he had requested through his former counsel, and he indicated that the test was still pending. *Id*. at 55-56. However, Petitioner's current counsel indicated that the independent test result was not pending and came back confirming the test results done by the State showing that Petitioner could not be excluded as a source of the DNA. *Id.* at 56. Petitioner's counsel indicated that he spoke to Petitioner about the results of the independent DNA test. *Id*. at 55-56. The trial court also summoned Petitioner's former counsel into court and questioned him about the information that he provided to Petitioner and his representation of Petitioner. *Id.* at 59-62. Based upon the trial court's hearing on the oral motion to withdraw the guilty plea, the court denied the motion, finding that Petitioner had more than competent counsel and entered his plea knowingly, intelligently and voluntarily. *Id*. at 58. The trial court thereafter imposed a total prison sentence of 16 years, 10 years on the rape conviction, and 6 years on the kidnapping conviction with the sexual motivation specification, with a merger of the other counts and a mandatory term of 5 years of post-release control. *Id.* at 64.

**B.** **Direct Appeal**

On October 14, 2014, Petitioner, through counsel, filed an appeal of his conviction and sentence to the Eighth District Court of Appeals. ECF Dkt. #11-1 at 5. In his appellate brief, Petitioner asserted the following assignments of error:

> I. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ALLOW APPELLANT TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING.
>
> II. THE TRIAL COURT ERRED WHEN IT FAILED TO MAKE MANDATORY FINDINGS BEFORE IMPOSING CONSECUTIVE SENTENCES.

*Id*. The State of Ohio filed an appellee brief. ECF Dkt. #11-1 at 19.

On April 23, 2015, the Eighth District Court of Appeals found no merit to Petitioner's appeal

and affirmed the trial court's judgment. *Sandridge*, 2015 WL 1851395, at *1. However, the Ohio appellate court noted that the trial court failed to incorporate its consecutive sentence findings into its journal entry and therefore remanded the case to the trial court in order to issue a new sentencing entry, nunc pro tunc, to incorporate its consecutive sentence findings. *Id*. at *7-*8.

On June 15, 2015, Petitioner pro se filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #11-1 at 35. In his memorandum in support of jurisdiction, Petitioner asserted the following proposition of law:

> I.    THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ALLOW APPELLANT TO WITHDRAW HIS PLEA PRIOR TO SENTENCING.

*Id*. at 38.

On September 16, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. ECF Dkt. #11-1 at 72; *State v. Sandridge*, No. 2015-0940, 143 Ohio St.3d 1465, 37 N.E.3d 1250 (Table), 2015-Oho-3733 (Sept. 16, 2015).

## II.    28 U.S.C. § 2254 PETITION

On August 26, 2016, Petitioner pro se executed the instant petition for a writ of federal habeas corpus, which was filed on September 15, 2016. ECF Dkt. #1. Petitioner raises the following ground for relief:

> GROUND ONE:
>
> THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ALLOW APPELLANT TO WITHDRAW HIS PLEA PRIOR TO SENTENCING.
>
> Supporting Facts:
>
> When Petitioner entered his guilty plea, he did so thinking that the State had collected DNA that definitively matched him. However, the DNA samples collected only showed that he could not be excluded. This sort of DNA result has been held to be considered inconclusive. Despite this fact, however, the Trial Court, the Defense Counsel, and the Prosecution all told Petitioner that it was without a doubt his DNA that was found at the scene, and that if he did not take a plea, he would receive the maximum penalty for everything.
>
> Petitioner orally requested to pull his plea before sentencing, proclaiming his innocence to the charges. This oral motion should have been granted. Because his plea was accepted in light of erroneous information, and because he pleaded his innocence, Petitioner should be allowed to withdraw his plea.

> Petitioner contacted the Ohio Innocence Project, who in turn contacted B.C.I. for a full DNA report. B.C.I. refused to turn that report over (Exhibit A). Petitioner has filed a Mandamus in the State Supreme Court attempting to get that report, but has not received a ruling yet.[2] Petitioner believes that report would be pivotal to his case, as does the Ohio Innocence Project.

*Id*. at 4-5. Respondent filed an answer/return of writ on December 2, 2016. ECF Dkt. #11.

Petitioner pro se filed a traverse on December 27, 2016. ECF Dkt. #13.

## III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th

---

[2] Respondent points out that the online docket for the Supreme Court of Ohio shows that the court dismissed his complaint for mandamus on October 26, 2016. ECF Dkt. #11 at 6, fn. 2, citing *Sandridge v. Bureau of Crim. Inv.*, No. 2016-1119, Entry Oct. 26, 2016. http://supremecourt.ohio.gov/pdf_viewer.aspx?pdf=210444.pdf.

Cir. 2000). Further, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. <u>Procedural Default</u>

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal

courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

> (1)    whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)    whether the state courts actually enforced the state procedural sanction;
>
> (3)    whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and
>
> (4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as

substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986). A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Id.*

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## IV.     STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

Finally, a reviewing federal court is bound by the presumption of correctness set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V.     ANALYSIS

Respondent asserts that the Court should dismiss Petitioner's federal habeas corpus petition because his sole ground for relief does not present a federal constitutional claim, it is otherwise procedurally defaulted, and it is without merit. The Court addresses each assertion in turn.

### A.     NONCOGNIZABILITY

Respondent first asserts that Petitioner has failed to assert a federal constitutional violation as required by 28 U.S.C. § 2254(a). ECF Dkt. #11 at 10-12. The undersigned agrees and recommends that the Court find that Petitioner's sole ground for relief alleging that the trial court abused its discretion in failing to allow him to withdraw his guilty plea does not state a federal constitutional violation and is therefore noncognizable before this Court.

A federal court may issue a writ of habeas corpus only on the grounds that the petitioner's confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).

A federal habeas corpus court "may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

A state defendant has no federal constitutional right, or absolute right under state law, to withdraw a guilty plea. *See e.g., Dickey v. Warden, Lebanon Corr. Inst.*, No.1:08cv819, 2010 WL 92510, at *1, *8 (S.D. Ohio Jan.6, 2010); *see also Cline v. Kelly*, No.1:09cv859, 2010 WL 1006529, at *5 & n.7 (N.D.Ohio Mar.16, 2010)(citing *United States v. Woods*, 554 F.3d 611, 613 (6th Cir.2009); *Xie v. Edwards*, No.93–4385, 1994 WL 462143, at *2 (6th Cir. Aug.25, 1994)). *Gibson v. Hocking Correctional Facility*, No.1:10CV8, 2011 WL 1429099 (S.D. Ohio Feb. 23, 2011). A state court's failure to follow its own rules is not cognizable in federal habeas corpus unless those failures constitute a violation of due process. *Smith v. Anderson*, 632 F.3d 277, 281 (6th Cir. 2011), citing *Ramos v. Rogers*, 170 F.3d 560, 564 n. 2 (6th Cir.1999)("Since this is an appeal of the denial of a habeas petition, we are not permitted to review whether the plea colloquy conformed with the strictures of Ohio Rule 11, but only whether it comported with the requirements of constitutional due process." (citing *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir.1998))); *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir.1995) ("Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." (internal quotation marks omitted)).

The Due Process Clause guarantees that a guilty plea must be made knowingly, intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In order "[f]or a plea to be knowing and voluntary, a defendant must be aware of the consequences of his plea, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Marks v. Davis*, No. 10-2216, 504 Fed. App'x 383, 385 (6th Cir. Nov. 2, 2012), unpublished, citing *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (quotation omitted). The Supreme Court of the United States has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady,* 397 U.S. at 748. A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004, quoting *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A plea may be involuntary if the defendant does not understand the nature of the constitutional protections that he is waiving and may be

unintelligent if the defendant does not understand the charge against him. *Henderson v. Morgan,* 426 U.S. 637, 645, n.13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). The government can show that the plea was made intelligently and voluntarily by producing a transcript of the state court proceedings. *McAdoo*, 365 F.3d at 494, citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993).

In the instant federal habeas corpus petition, Petitioner relies solely upon Ohio statutory and caselaw law in asserting that the Ohio trial court abused its discretion by failing to allow him to withdraw his guilty plea. ECF Dkt. #1-1. He contends that his guilty plea was based upon the erroneous belief by the prosecution, the court, defense counsel, and himself that the state's DNA test result definitively identified him as the source of the DNA when the result indicated that he could not be excluded as a source of the DNA, which he asserts is an inconclusive result. *Id.* at 11-12. Since he relies solely upon Ohio law in the instant federal habeas corpus petition, Petitioner has failed to assert a federal constitutional violation and the Court should dismiss Petitioner's federal habeas corpus petition as noncognizable.

Further, in reviewing Petitioner's plea hearing for compliance with due process, the undersigned recommends that the Court find that the transcript of the hearing shows that Petitioner was informed of all of his rights and he understood those rights as well as the rights that he was waiving upon pleading guilty. ECF Dkt. #11-2 at 14. At the plea hearing, the prosecution read aloud each of the six counts against Petitioner and indicated to the court that Petitioner, with counsel, was ready to withdraw his not guilty plea and enter guilty pleas to the amended Count 1 rape charge with no specifications, the amended Count 3 charge of gross sexual imposition with no specifications, and the amended kidnapping Count 6 charge with a sexual motivation specification. *Id.* at 15-17. Counsel for Petitioner thereafter informed the court that he and Petitioner had reviewed Petitioner's constitutional rights and Petitioner was ready to plead guilty. *Id.* at 18-19.

The trial court then addressed Petitioner, asking him his name and age. ECF Dkt. #11-2 at 18-19. Upon further inquiry by the trial court, Petitioner responded that he had an 11th grade education, he could read and write "some," and he was able to read and understand the indictment. *Id.* at 19. He indicated that a prisoner in his pod read him the indictment and his counsel also read it to him. *Id.* at 19-20. The trial court asked if Petitioner understood how serious "this" was and

Petitioner responded that he did. *Id*. at 20. When the court asked if Petitioner was under the influence of alcohol, drugs or medications that would negatively impact his ability to understand the proceedings or his plea, Petitioner responded that he was taking "psych meds," like Trazodone and Haldol, which calmed him down and had a good effect on him, making him understand things better. *Id*. Petitioner reported that he had been on these medications all of his life. *Id*. at 21. Upon court inquiry, Petitioner reiterated that he understood what was happening at the proceeding, no threats or promises had been made to induce him into changing his plea, and he was satisfied with the services of his lawyer. *Id*. at 20-21. The trial court also asked whether Petitioner was currently on community control sanctions, probation or parole, and Petitioner responded that he was on post-release control. *Id.* at 21-23. The court informed Petitioner that a guilty plea in the instant case may lead to additional penalties in the other case which could include prison time that may run consecutive to any time received in the instant case. *Id*. at 22-23. Petitioner responded that he understood. *Id*. at 23.

The trial court then outlined Petitioner's constitutional and trial rights and the fact that Petitioner was waiving those rights by pleading guilty. ECF Dkt. #11-2 at 24-25. Petitioner responded that he understood each right and the waiver of that right. *Id*. The court then read the charges to which Petitioner would be pleading guilty and the maximum sentences and fines that Petitioner could face upon pleading guilty to each charge. *Id*. at 26-33. The trial court again asked if Petitioner had been threatened or been promised anything besides what was presented in open court and he responded no. *Id.* at 33. The trial court asked if Petitioner understood that there is no promise of a particular sentence and he indicated that he understood. *Id.* The court then asked Petitioner's counsel if it had complied with Rule 11 of the Ohio Rules of Criminal Procedure and counsel responded that the court had complied. *Id.* The court then indicated on the record that it was satisfied that Petitioner had been informed of his rights, understood the nature of the charges, the effect of a plea and the maximum penalties that he was facing. *Id.*

The court then inquired of Petitioner how he plead as to each of the amended charges and the sexual motivation specification. ECF Dkt. #11-1 at 34-35. Petitioner responded that he was guilty to each of the amended charges. *Id*.

At the sentencing hearing held on June 5, 2014, the trial court reiterated the guilty pleas that Petitioner had entered to the amended charges and the prosecution began the hearing by indicating that the presentence report showed that Petitioner had a long criminal history which included strong-arm robbery. ECF Dkt. #11-2 at 40-44. The prosecutor detailed the facts of the instant case and pointed out that Petitioner's DNA was found on one of the victims' underwear in the form of touch DNA or saliva. *Id*. at 43-44. The prosecution further indicated that the child victims were also able to identify Petitioner by his clothing, color of his teeth, glasses and a smell coming off of him immediately after the incident and Petitioner was arrested minutes later after the identification. *Id*. at 44-45.

At this point in the sentencing hearing, Petitioner's counsel indicated that Petitioner wanted to withdraw his guilty plea. ECF Dkt. #11-2 at 46. Petitioner addressed the court, stating that he did not rape the victim as he had three granddaughters himself, ages 5, 8, and 9. *Id*. When the court asked Petitioner how his DNA got on the victim's underwear, Petitioner responded that he did not know and he had never seen the child victims before in his life. *Id*. at 47. Petitioner thereafter indicated that his last counsel told him that the victims were probably coerced into identifying him and he did not receive a bill of particulars or discovery. *Id*. at 47-48. Petitioner's current counsel informed the court that he did meet with Petitioner to review discovery, but most of the discovery was marked for counsel's eyes only, although counsel discussed with Petitioner everything that was in the documents. *Id*. at 48.

The trial court asked how long Petitioner's current counsel had been a lawyer, and counsel responded 12 or 13 years and he represented that he handled cases similar to Petitioner's very frequently as both a former prosecutor and as defense counsel. ECF Dkt. #11-2 at 48. Counsel informed the court that he spoke to Petitioner about his rights to go to trial and the possibilities of going to trial. *Id*. at 48-49. Petitioner spoke up that he did not enter his plea with his current counsel and his former counsel told him that if they went to trial, he believed that Petitioner would lose because he felt like the children were coerced. *Id*. at 49. Petitioner indicated that he kept telling his former counsel that he did not have oral sex with the child victim and he had never hurt anyone in any of his previous crimes. *Id*.

The court then reminded Petitioner of the plea hearing and asked if anyone, including counsel, had forced Petitioner into pleading guilty and he responded that no one had. ECF Dkt. #11-2 at 50-53. Petitioner then asked if he could speak and Petitioner stated:

> May I please speak, Your Honor.  It goes to the fact that I was thinking about my grandchildren, not being able to be in their life.  And when I - - when he read that to me, Your Honor, it gave me a chance to think.  I couldn't even take my grandchildren to school, I couldn't participate in a school play with my grandchildren because of the
> fact of being a sex predator, what I am not.
>
> Your Honor, it wasn't - - if I get three years or 300 years, I got to be able to live with myself.  And I couldn't live with myself knowing that I've been accused of doing something to a small 8-year-old girl that I did not do.

*Id.* at 55-57. Petitioner than spoke about a motion for independent DNA testing that his prior counsel had filed on his behalf that was still pending, and the court had a sidebar with counsel where Petitioner's current counsel indicated that the independent DNA result had come in and he discussed the result with Petitioner.  *Id.* at 55-56.  The prosecutor noted for the record that the independent DNA test confirmed the same result as the DNA testing that the State of Ohio had conducted that Petitioner could not be excluded as a source of the DNA.  *Id*. at 56.  Counsel for Petitioner indicated that he shared that information with Petitioner at their last meeting.  *Id*.  The court then asked Petitioner if he was aware of the independent DNA test results, and he responded that he was aware that the result indicated that he could not be excluded, which meant that "everybody in this room cannot be excluded."  *Id*. at 57.  Petitioner reiterated that he would never hurt a child.  *Id*. at 57-58.

The trial court thereafter overruled the motion for Petitioner to withdraw his plea.  ECF Dkt. #11-2 at 58.  The court found that Petitioner was represented by two very competent counsel who were well-respected and among the best counsel for defendants.  *Id*.  The court further found that Petitioner's plea was made knowingly, intelligently and voluntarily, under no compulsion to do so, and with the opportunity to speak to counsel throughout the proceedings.  *Id*.

The trial court also had Petitioner's former counsel summoned and questioned him at the sentencing hearing.  ECF Dkt. #11-2 at 59.  The court asked Petitioner's former counsel what he did in representing Petitioner and former counsel indicated that he extensively pretried the case, ordered an independent DNA test, and visited him twice, although Petitioner disputed that, indicating that

-15-

he never had a conversation with former counsel one-on-one. *Id*. at 60. Former counsel indicated that Petitioner's statement was "absolutely a lie" as he went to the jail multiple times to talk to him and they went over the entire case together, although Petitioner did deny that he committed the crimes. *Id*. at 59-61. Former counsel indicated that he showed Petitioner the State's DNA results and the police reports, and he ordered an independent DNA test because Petitioner said that he did not commit the crimes. *Id*. at 61.

The parents of the child victims then spoke. Their mother indicated that the children were not coerced into identifying Petitioner and when she returned her daughter to the place where the incident occurred, her daughter described Petitioner "to a T down to the tattoos and how many gold teeth he had in his mouth. She even smelled like his cologne they found him with at the time of arrest. My son sat there and described him to a T." ECF Dkt. #11-2 at 62-63.

Based upon the transcript of the plea hearing and the sentencing hearing which show that Petitioner was thoroughly informed of his rights, the waiver of those rights, and represented by competent counsel, the undersigned recommends that the Court find that Petitioner's plea hearing comported with due process and he voluntarily, intelligently and knowingly waived his constitutional rights to a trial and entered his guilty plea.

For the foregoing reasons, the undersigned recommends that the Court find that Petitioner has presented no federal constitutional violation and Petitioner's plea and plea hearing comported with due process.

### B. PROCEDURAL DEFAULT

Respondent also asserts that Petitioner's ground for relief is procedurally defaulted because he failed to fairly present to the Ohio courts the same claim that he presents in the instant ground for relief before this Court. ECF Dkt. #11 at 12. Respondent points out that in his briefs before the Ohio appellate and Ohio Supreme courts, Petitioner argued only under Rule 32.1 of the Ohio Rules of Criminal Procedure that the trial court had abused its discretion by failing to allow him to withdraw his guilty plea. *Id*. They contend that Petitioner failed to put the Ohio courts on notice that he was asserting a federal constitutional claim and he has therefore procedurally defaulted his ground for relief before this Court. *Id*.

In his brief before the Ohio appellate court, Petitioner's first assignment of error asserted that the trial court abused its discretion by failing to allow him to withdraw his guilty plea. ECF Dkt. #11-1 at 9. Petitioner quoted Rule 32.1 of the Ohio Rules of Criminal Procedure and cited solely to Ohio caselaw throughout the brief regarding the withdrawal of a guilty plea. *Id.* at 9-12. In his second assignment of error before the Ohio appellate court, Petitioner asserted that the trial court erred by failing to make mandatory findings before imposing consecutive prison sentences. *Id*. at 12. Again, however, he cited solely to Ohio statutory and caselaw in presenting this assignment of error. *Id*. at 12-14. In its decision, the Ohio appellate court cited solely Ohio law in addressing Petitioner's assignments of error, evidencing that no federal constitutional issue was presented. *Sandridge*, 2015 WL 1851395, at *1-*7.

Before the Ohio Supreme Court, Petitioner's sole proposition of law in his memorandum in support of jurisdiction asserted that the trial court abused its discretion in failing to allow him to withdraw his guilty plea. ECF Dkt. #11-1 at 37-44. He then again quoted and cited only to Ohio statutory and caselaw. *Id*.

Thus, even if the Court would find that Petitioner had presented a federal constitutional claim in his sole ground for relief in his instant federal habeas corpus petition, he has nevertheless failed to fairly present this claim to the Ohio courts as a federal claim. "State prisoners must exhaust available state remedies by, among other things, fairly presenting their federal claims to the state courts before petitioning for a federal writ of habeas corpus." *See Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009), citing 28 U.S.C. § 2254(b), (c); *Whiting v. Burt*, 395 F.3d 602 (6th Cir.2005). This satisfies the comity and respect between federal and state courts by requiring a federal habeas corpus petitioner to "give the state courts the first opportunity to consider and rule upon the federal claims the prisoner wishes to use to attack his state court conviction." *Pudelski*, 576 F.3d at 605, citing *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

Accordingly, Petitioner's ground for relief before this Court, even if construed as a federal constitutional claim, would nevertheless be procedurally defaulted because Petitioner has not given the Ohio courts the first opportunity to rule on the federal claim and he cannot now return to the Ohio courts to present the claim as a federal claim because he had already taken a direct appeal and the time for filing an application pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure or a

post-conviction relief petition pursuant to Ohio Revised Code § 2953.21 have expired.

In order to avoid the procedural default of his instant ground for relief and to have his ground for relief considered by this Court, Petitioner must show cause for failing to present the claim to the Ohio courts and actual prejudice if the claim is not considered. If Petitioner cannot show cause and prejudice, he may still obtain federal habeas corpus review if he can show a fundamental miscarriage of justice such that a constitutional violation has resulted in a conviction of one who is actually innocent.

Petitioner presents no assertions of cause to excuse his failure to file the instant ground for relief as a federal constitutional claim in the Ohio courts. Accordingly, the Court need not address prejudice. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000)("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice.")

Moreover, in order to establish actual innocence, Petitioner must show "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316. Morever, in a plea bargain case, the petitioner must show actual innocence even for the more serious counts that were dismissed. *Bousley*, 523 U.S. at 624.

In the instant case, Petitioner asserts his innocence to the crimes. He cites to the independent DNA evidence finding that he could not be excluded as a source for the DNA found on the victim, which he interprets as an inconclusive finding. ECF Dkt. #13 at 6-7. He asserts that he entered his guilty plea because he believed that the State had definitive and conclusive DNA evidence that he was the source of the DNA found on the victim, but the State only had test results showing that he could not be excluded as the source of the DNA. *Id*. at 4.

The undersigned recommends that the Court find that Petitioner has not met the narrow class of cases for establishing the fundamental miscarriage of justice exception to procedural default. While the DNA results are not in the record, the trial court and the prosecution both indicated at the sentencing hearing that Petitioner's touch or saliva DNA was found on the victim's underwear. ECF

-18-

Dkt. #11-2 at 44-45, 47, 54. Defense counsel represented at the hearing that he informed Petitioner that the independent DNA test results had come back and they confirmed the State's DNA test results. *Id*. at 55-57. Thus, no new evidence is presented by Petitioner as to actual innocence.

Moreover, both the prosecution and the child victims' mother indicated at the sentencing hearing that immediately after the incident, the children ran home immediately and told their parents and gave descriptions of the perpetrator, down to what he was wearing, the color of his hair, the number of gold teeth that he had, and an odor of cologne that was coming off of him. *Id.* at 45, 62-63. Petitioner was arrested minutes later. *Id*. at 45. Accordingly. Petitioner has not shown that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his sole ground for relief and has not presented cause and prejudice or a fundamental miscarriage of justice in order to otherwise review his claim.

### C.     MERITS

Even if Petitioner presented a federal constitutional claim in the instant petition and he had not otherwise procedurally defaulted his ground for relief, the undersigned would recommend that the Court find no merit to Petitioner's claim. Again, Petitioner asserts that the trial court abused its discretion in failing to allow him to withdraw his plea because it was allegedly based upon erroneous information concerning the State's DNA test result. ECF Dkt. #1 at 4-5.

In addressing this assertion, the Ohio appellate court found that the trial court did not abuse its discretion in denying Petitioner's request to withdraw his guilty plea. *Sandridge*, 2015 WL 1851395, at *5. The appellate court found that Petitioner was represented by highly competent counsel, he was given a full hearing before he entered the plea in order to determine that he knowingly, voluntarily and intelligently was entering the plea, he was given a full and impartial hearing on his request to withdraw his plea, and the court gave full and fair consideration to the request. *Id.*

A guilty plea is valid if it is knowingly, voluntarily, and intelligently entered under the totality of the circumstances. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *Bousley*, 523 U.S. at 618. The State has the burden of showing that the plea was entered in such a manner and satisfies

this burden by producing a copy of the transcript of the plea proceeding. *Stumpf v. Mitchell,* 367 F.3d 594, 600 (6th Cri. 2004), vacated in part on other grounds in *Bradshaw v. Stumpf*, 545 U.S. 175. "A state court finding that the plea was proper is accorded a presumption of correctness, unless the transcript of the plea proceeding is inadequate to demonstrate that the plea was voluntary, intelligent, and knowing." *Id*.

As detailed above, the undersigned recommends that the Court find that the transcript of the plea hearing shows that Petitioner was informed of all of his rights and he understood those rights and the rights that he was waiving upon pleading guilty. ECF Dkt. #11-2 at 14. He was informed of the charges against him and the prosecution presented the amended charges to which Petitioner, with counsel, was ready to enter guilty pleas. *Id*. at 15-17. Counsel for Petitioner thereafter informed the court that he and Petitioner had reviewed Petitioner's constitutional and trial rights and Petitioner was ready to plead guilty. *Id*. at 18-19.

The trial court then addressed Petitioner, asking him his name and age. ECF Dkt. #11-2 at 18-19. The court asked Petitioner his education, and Petitioner responded that he had an 11th grade education, he could read and write "some," and he was able to read and understand the indictment. *Id*. at 19. The court inquired whether Petitioner was under the influence of alcohol, drugs or medications that would negatively impact his ability to understand the proceedings or his plea, Petitioner responded that he was taking "psych meds," like Trazodone and Haldol, which calmed him down and had a good effect on him, making him understand things better. *Id*. The court asked whether Petitioner understood what was happening at the proceeding, and Petitioner responded that he understood what was happening. *Id*. at 21. The court asked whether threats or promises had been made to induce him into changing his plea, and Petitioner responded that none had been made. *Id*. The court asked if Petitioner was satisfied with the services of his lawyer, and Petitioner said that he was. *Id*. The trial court also asked whether Petitioner was currently on community control sanctions, probation or parole, and Petitioner responded that he was on post-release control. *Id.* at 21-23. The court informed Petitioner that a guilty plea in the instant case may lead to additional penalties in the other case which could include prison time that may run consecutive to any time received in the instant case. *Id*. at 22-23. Petitioner responded that he understood. *Id*. at 23.

The trial court outlined Petitioner's constitutional and trial rights and the fact that Petitioner was waiving those rights by pleading guilty. ECF Dkt. #11-2 at 24-25. Petitioner responded that he understood each right and the waiver of that right. *Id*. The court then read the charges to which Petitioner would be pleading guilty and the maximum sentences and fines that Petitioner could face upon pleading guilty to each charge. *Id*. at 26-33. The trial court again asked if Petitioner had been threatened or been promised anything besides what was presented in open court and he responded no. *Id*. at 33. The trial court asked if Petitioner understood that there is no promise of a particular sentence and he indicated that he understood. *Id*. The court then asked Petitioner's counsel if it had complied with Rule 11 of the Ohio Rules of Criminal Procedure and counsel responded that the court had complied. *Id*. The court then indicated on the record that it was satisfied that Petitioner had been informed of his rights, understood the nature of the charges, the effect of a plea and the maximum penalties that he was facing. *Id*.

The court then inquired of Petitioner how he plead as to each of the amended charges and the sexual motivation specification. ECF Dkt. #11-1 at 34-35. Petitioner responded that he was guilty to each of the amended charges. *Id*.

At the sentencing hearing held on June 5, 2014, the trial court reiterated the guilty pleas that Petitioner had entered to the amended charges and the prosecution began the hearing by indicating that the presentence report showed that Petitioner had a long criminal history which included strong-arm robbery. ECF Dkt. #11-2 at 40-44. When Petitioner, through counsel, requested to withdraw his guilty plea, the court allowed Petitioner to address the court and he stated that he did not rape the victim. *Id*. at 46. When asked how his DNA got on the victim's underwear, Petitioner responded that he did not know and he had never seen the child victims before in his life. *Id*. at 47. Petitioner thereafter indicated that his last counsel told him that the victims were probably coerced into identifying him and he did not receive a bill of particulars or discovery. *Id*. at 47-48. Petitioner's current counsel informed the court that he met with Petitioner to review discovery, and while most of the discovery was marked for counsel's eyes only, counsel discussed with Petitioner everything that was in the documents. *Id*. at 48.

The trial court asked how long Petitioner's current counsel had been a lawyer, and counsel responded 12 or 13 years and he represented that he handled cases similar to Petitioner's very

frequently as a former prosecutor and as defense counsel. ECF Dkt. #11-2 at 48. Counsel informed the court that he spoke to Petitioner about his rights to go to trial and the possibilities of going to trial. *Id.* at 48-49. Petitioner indicated that his former counsel told him that if they went to trial, he believed that Petitioner would lose because he felt like the children were coerced. *Id.* at 49. Petitioner indicated that he kept telling his former counsel that he did not have oral sex with the child victim and he had never hurt anyone in any of his previous crimes. *Id.* The trial court had Petitioner's former counsel summoned and questioned him at the sentencing hearing. *Id.* at 59. Petitioner's former counsel indicated that he extensively pretried Petitioner's case, ordered an independent DNA test, and visited Petitioner twice, although Petitioner disputed that. *Id.* at 60. Former counsel stated that he went to the jail multiple times to talk to him and they went over the entire case together. *Id.* at 59-61. Former counsel indicated that he showed Petitioner the State's DNA results and the police reports, and he ordered an independent DNA test because Petitioner said that he did not commit the crimes. *Id.* at 61.

The court then reminded Petitioner of the plea hearing and asked him if he felt that the court or anyone forced him into pleading guilty and he responded that no one had. ECF Dkt. #11-2 at 52-53. Petitioner spoke about the motion for independent DNA testing that his prior counsel had filed that was still pending, and the court had a sidebar with counsel where Petitioner's current counsel indicated that the independent DNA result did come in and he discussed the result with Petitioner. *Id.* at 55-56. The prosecutor noted for the record that the independent DNA test confirmed the result of the testing that the State of Ohio had already conducted that Petitioner could not be excluded as a source of the DNA. *Id.* at 56. Counsel for Petitioner indicated that he shared that information with Petitioner at their last meeting. *Id.* The court asked Petitioner if he was aware of the results, and he responded that he was aware that the DNA indicated that he could not be excluded, which to him meant that "everybody in this room cannot be excluded." *Id.* at 57.

Upon review of the information presented at the hearing on the motion to withdraw the guilty plea, and the plea hearing, the trial court overruled Petitioner's motion. ECF Dkt. #11-2 at 58. The court noted that Petitioner was represented by two very competent counsel and Petitioner's plea was made knowingly, intelligently and voluntarily, under no compulsion, and with the opportunity to speak to counsel throughout the proceedings. *Id.*

Upon the undersigned's review of the Ohio appellate court decision, the plea transcript and the hearing on the motion to withdraw the plea which were thoroughly conducted, the undersigned recommends that the Court find that the Ohio appellate court's decision was not contrary to or an unreasonable application of United States Supreme Court precedent.

## VI. **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice. ECF Dkt. #1. Moreover, based upon the instant Report and Recommendation, the undersigned finds no need for an evidentiary hearing and therefore DENIES Petitioner's motion for an evidentiary hearing. ECF Dkt. #3.


DATE:   April 27, 2017                         _/s/ George J. Limbert_____
                                               GEORGE J. LIMBERT
                                               UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).